E. MARTIN ESTRADA
United States Attorney
CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division
KATHRYNNE N. SEIDEN (Cal. Bar No. 310902)
Assistant United States Attorney
Terrorism and Export Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0631
     Facsimile: (213) 894-0141
     E-mail:    kathrynne.seiden@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 8:23-00100(A)-CJC-3 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT XAVIER BATTEN |
| v. | Hearing Date: May 13, 2024 |
| CHANCE BRANNON, TIBET ERGUL, and XAVIER BATTEN, | Hearing Time: 11:00 a.m.<br>Location:     Courtroom of the<br>              Hon. Cormac Carney |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Kathrynne N. Seiden, hereby files its Sentencing Position for Defendant Xavier Batten.

This Sentencing Position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit. The

//

government respectfully reserves the right to supplement this Sentencing Position with additional information as needed, including to respond to defendant's Sentencing Position.

Dated: May 1, 2024            Respectfully submitted,

                              E. MARTIN ESTRADA
                              United States Attorney

                              CAMERON L. SCHROEDER
                              Assistant United States Attorney
                              Chief, National Security Division


                                    /s/
                              _____
                              KATHRYNNE N. SEIDEN
                              Assistant United States Attorney

                              Attorneys for Plaintiff
                              UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In March 2023, defendant Xavier Batten ("defendant") counseled his codefendant on how to build a destructive device, knowing and intending that it would be used to attack a healthcare clinic.  In July 2023, defendant was charged by indictment with crimes carrying a five-year statutory mandatory minimum: conspiracy and aiding and abetting the malicious destruction of property by fire and explosives, in violation of 18 U.S.C. §§ 844(n) and 844(i).  (Dkt. 26.)  In January 2024, defendant pled guilty to a superseding information charging him with aiding and abetting the possession of an unregistered destructive device, in violation of 26 U.S.C. § 5861(d), and intentional damage to a reproductive health services facility, in violation of 18 U.S.C. § 248(a)(3).  (Dkt. 78.)

In March 2023, the United States Probation and Pretrial Services Office ("Probation") issued its Presentence Investigation Report and Recommendation Letter, in which it correctly calculated defendant's offense level as 21 and his criminal history category as I, for a Guidelines range of 37 to 46 months' imprisonment.  (Dkt. 104 (PSR) ¶ 144.)  Noting defendant's mental health history and diagnoses, Probation recommended that defendant be sentenced to 30 months' imprisonment (the equivalent of a two-level downward variance), a three-year term of supervised release, and a $125 mandatory special assessment.  (PSR ¶ 161; Dkt. 103 ("Recommendation") at 2.)  The government agrees with Probation's calculations but submits that defendant's history and characteristics, coupled with the nature and circumstances of his crime and the need to protect the public, warrant a within-Guidelines

sentence. Accordingly, the government respectfully requests that the Court sentence defendant to 37 months' imprisonment, a three-year term of supervised release to include suspicion-less search conditions[1], $1,000 in restitution, and a $125 mandatory special assessment.

## II. STATEMENT OF FACTS

### A. Defendant Counsels His Codefendant on How to Build a Destructive Device to Firebomb a Planned Parenthood

Beginning around February 2022, defendant knowingly conspired with his codefendant, Chance Brannon ("Brannon"), to use a Molotov cocktail to damage a Planned Parenthood. (Dkt. 75 ¶ 14.) On or about March 12, 2022, in codefendant Tibet Ergul's ("Ergul's") garage in Orange County, California, Brannon and Ergul put together a Molotov cocktail. (Id.) Defendant, who was in Florida at the time, helped Brannon by advising him as to how to build the Molotov cocktail, including by exchanging the following text messages just hours before the attack:

```
BRANNON:     How much styrofoam
DEFENDANT:   You don't need an exact measurement just ensure
             you have at least a few inches
DEFENDANT:   You can also just do as much as it will dissolve.
             The point is adhesion.
BRANNON:     God bless.
BRANNON:     Pray for our success
DEFENDANT:   I will right now
```

(Dkt. 61 at 21-23.) Defendant advised Brannon knowing that Brannon intended to use the Molotov cocktail to firebomb a fertility clinic. (PSR ¶ 14.)

---

[1] Defendant agreed to this condition in his plea agreement. (Dkt. 75 ¶ 2n.)

2

1    Around 1:00 a.m. on March 13, 2022, disguised in dark clothing,
2 hoods, masks, and gloves, Brannon and Ergul drove to the vicinity of
3 a Planned Parenthood in Orange County.  (Id.)  Brannon and Ergul
4 approached the entrance of the clinic, ignited the Molotov cocktail,
5 and threw it at the clinic entrance, intentionally starting a fire.
6 (Id.)  Brannon and Ergul then fled.  (Id.)  Within minutes, Brannon
7 texted defendant to tell him their plan had been successful.  (Id.)
8 Specifically, Brannon and defendant exchanged the following messages:

| | |
|---|---|
| BRANNON: | It's done. |
| DEFENDANT: | 88.[2]  Did you see how long it lasted? |
| BRANNON: | Not really but it was fucking good |
| DEFENDANT: | Just making sure it all went well.  Congratulations on your success brother |
| BRANNON: | Thank you.  Please pray for our shelter from the investigative eyes |
| DEFENDANT: | I will. |

(PSR ¶ 27.)

    Defendant's browser history reflects that later on the day of
the firebombing, defendant sought out news coverage of the attack he
facilitated, searching for "abortion clinic bombing" and "California
abortion clinic bombing" on his phone.  (Dkt. 61 at 15.)  When he
could not reach Brannon a few days later because Brannon was in the
field on military assignment, defendant searched for "abortion clinic
arsonist arrested in California" to see whether Brannon had been
caught.  (Id. at 15, 27.)  But when defendant was arrested more than
a year later, defendant told law enforcement he had not heard about
the incident until Brannon's June 2023 arrest.  (Id. at 14.)

---

[2] "88" is a coded term for "Heil Hitler," often used by white supremacists and neo-nazis, based on H being the eighth letter of the alphabet.

3

### B. Defendant Evinces an Interest in Committing Additional Violent Attacks and Seeks Advice From His Codefendant

After congratulating his codefendant on a successful attack, defendant's interest in explosives seemingly grew. On March 14, 2022, the day following the firebombing, defendant searched "how to make an IED," "how to make a pressure activated mine," and "how to make a landmine." (Dkt. 61 at 15.) In April, defendant searched "what would happen if you dropped a lit cigarette into a gas tank of a car? Would it explode right away or just catch fire?" (Id.)

Defendant's search history throughout April and May reflect persistent interest in a variety of topics, including antisemitic or racist ideologies ("catholic kkk," "kkk allies," "happy birthday hitler, "stalin racist quotes," and "78 percent of slaveowners jewish"); cannibalism ("human meat recipes," "a defense of cannibalism," "canninalism [sic] is morally good," "cannibal recipes," "pro cannibalism essay," and "I love sneaking into maternity wards and eating the afterbirth"); abortion ("why are fetal skulls crushed during an abortion"); firearms ("Remington revolver serial number generator," "Remington revolver models," "Ruger SR22 Rimfire Pistol Models," and "thehomegunsmith.com"); and, most concerningly, acts of mass violence ("tulsa race riot," "buffalo shooting," "tranny shooter," "Orlando shooter was American," "who shot up Orlando"). (Id. at 15-16.) Defendant also kept various violent and racist notes on his phone. (Id. at 15.)

On May 19, 2022, defendant texted Brannon, asking for advice on committing an attack similar to that he had helped commit two months earlier:

DEFENDANT:   Can you give me a quick rundown on good opsec
BRANNON:     Be a little more specific

4

```
     DEFENDANT:         For instance how would that nigga in the bible
                        get away with destroying the temple of moloch³ in
                        the modern age
     BRANNON:           No phone or at least enable airplane mode within
                        vicinity of site-print off directions at home if
                        they're needed
                        Quick escape routes
                        Don't be identified on camera in a vehicle near
                        the site
                        If must be id'd on camera on foot obscure all
                        identifying info-face, skin color, logos on
                        clothing
     BRANNON:           Plan out approach and exit beforehand
     BRANNON:           Gloves mandatory
     BRANNON:           No eyewitnesses present
     BRANNON:           Shit happens so if someone sees you you better be
                        masked and don't run back to your car at first
                        because they will make your plates
     BRANNON:           Go at least 25 minutes drive away from where you
                        normally live, hang out, and work. It should be
                        in the jurisdiction of another PD
     DEFENDANT:         Understood. Thanks for helping me with my history
                        homework
     BRANNON:           Delete these messages after you write them down
                        or memorize them
     DEFENDANT:         Got it
     DEFENDANT:         Wouldn't me being 6'6 be an identifying feature
     BRANNON:           "Putting out a call for a tall male"
     BRANNON:           Unidentified race
     DEFENDANT:         True
     BRANNON:           If you're gone immediately there's basically zero
                        chance of capture. The local pd will be searching
                        for a tall man who's not even around anymore
     BRANNON:           Plus by the time they review the camera footage
                        (if there is any) it'll be far too late
```
(Id. at 29-34; PSR ¶ 29.)

**C.   Defendant States He Is Planning a Mass Shooting and Distributes Guides for Creating Weapons of Mass Destruction**

In August 2022, defendant texted Brannon that he had done some "deep thinking" about his desire to restore his "previous piety." (Dkt. 61 at 36.)  Defendant expressed having "prayed that [his] blood

---

³ "Temple of Moloch" is believed to be a coded reference to an abortion clinic, based on reference to a biblical form of child sacrifice.

5

lust and apathy and rage would be calmed" and claimed to have been feeling "docile and happier and going out of [his] way to help people[.]"  (Id.)  Just a month later, in September 2022, defendant threatened to commit a mass shooting on a gaming platform.  (Id. at 16.)  Specifically, defendant set his tag line to "I am planning a mass shooting" and told other users he was planning a mass shooting because the "system" had failed him.  (Id.; PSR ¶ 31.)  Defendant also used the gaming platform to distribute guides on making weapons of mass destruction and guides on "civilian warfare and sabotage," among others.  (Dkt. 61 at 16.)  When interviewed, defendant implied that he did not remember writing anything about a shooting and was just joking around.  (Id.)

Later, defendant told Brannon about the warnings FBI had given him about continuing to disseminate the guides.  (Id.; PSR ¶ 30.)  When Brannon chastised defendant for having made admissions to the agents, defendant insisted "They had everything word for word," but assured Brannon "I also told them I have autism."  (Id.)

Defendant's threats were not his first.  Five years earlier, while in high school, defendant was hospitalized after making threats to shoot his classmates and claiming to be an Islamic terrorist.  (PSR ¶ 101.)

**III. A 37-MONTH SENTENCE IS SUFFICEINT BUT NO GREATER THAN NECESSARY TO ACCOUNT FOR THE RELEVANT FACTORS UNDER 18 U.S.C. § 3553(A)**

First, the nature and circumstances of the offense charged support a within-Guidelines sentence.  Defendant intentionally helped his codefendants create an incendiary device to throw at a healthcare clinic, intending to damage or destroy the building.  In other words, defendant conspired to commit arson and aided and abetted his

6

codefendants in committing it.  As illustrated by the fact that Congress prescribed a five-year mandatory minimum for that conduct, defendant's behavior was extremely serious and put both people and property at risk.

To be sure, defendant was not physically present when his codefendants firebombed the Planned Parenthood.  Nonetheless, defendant acted with full knowledge that his codefendants were not only creating an explosive device or planning to use it to commit arson in general, but with the additional knowledge that they were planning to attack a healthcare clinic.  Moreover, defendant's willingness to help his codefendants firebomb a healthcare clinic from afar, without being present to check for people or control the circumstances, reflects a seeming apathy to whether anyone would be hurt or killed as a result of his tutelage.  Accordingly, the nature and circumstances of the crime militate in favor of a within-Guidelines sentence.

Second, defendant's participation in the firebombing neither deterred him nor caused him to second guess the propriety or dangerousness of his conduct.  To the contrary, apparently inspired by the firebombing he aided and abetted, defendant researched how to make new incendiary devices the very next day and persistently searched firearms and mass casualty events over the next two months, finally turning to Brannon for advice on completing and getting away with an attack on a second clinic. (Dkt. 61 at 16-18, 29-34.)  Four months after that, in September 2022, defendant zealously shared his knowledge on creating weapons of mass destruction -- and tactics on how to use them -- with friends and strangers on a gaming platform. (Id. at 16.)  Even more concerning, defendant perpetuated his history

7

of threatening to commit mass shootings.  (Id.; PSR ¶¶ 31, 100.)  Accordingly, defendant's history and characteristics also weigh in favor of a within-Guidelines sentence.

Third, although defendant suffers from mental health issues which are in one sense mitigating, those mental health issues also seemingly exacerbate his danger to the community.  (PSR ¶ 113.)  That danger is further exacerbated by his violent and racially motivated ideology, which is evident from the searches on his phone, his communication with Brannon, and his threats to strangers over the internet.  Defendant wrote himself violent and racist notes, sought out information related to prior hate-motivated shootings, frequently greeted Brannon with coded language for "Heil Hitler," and researched and exchanged homophobic, racist, and antisemitic information and sentiments.  (Dkt. 61 at 16-18; PSR ¶ 27.)  As one example, in January 2023, Brannon texted defendant to ask how far he lived from Hollywood, Florida.  (Dkt. 61 at 40-42.)  Defendant responded that he was four and a half hours away.  (Id.)  Brannon responded: "I need you to drive there and lynch a [n-word] and his two children" and provided defendant with the person's name.  (Id.)  Defendant responded: "On it."  (Id.)  Those conversations are concerning enough, but are especially so when coupled with defendant's interest in prior mass casualty events, his repeated threats to conduct mass shootings, his demonstrated interest in firearms and explosives, and, in his own words, his "blood lust and apathy and rage."  (Id. at 16-18, 36; PSR ¶¶ 31, 100.)  A significant period of custody is necessary to incapacitate defendant until his mental health stabilizes and to protect the public from his conduct.

//

8

## IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to 37 months' imprisonment, a three-year term of supervised release, $1,000 in restitution, and a $125 special assessment.

Dated: May 1, 2024                    Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division

          /s/
KATHRYNNE N. SEIDEN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA